IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TYRONE EARL WALTON, | Case No. 2:16-cv-01548-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| JOHN M. MYRICK, JAMES DEACON, M. BRANDT, R.A. YOUNG, and CRAIG A. PRINS, being sued in their individual and official capacities, | |
| Defendants. | |

**BECKERMAN, Magistrate Judge.**

Tyrone Walton ("Walton") is an inmate in the custody of the Oregon Department of Corrections ("ODOC"). He brought this action under 42 U.S.C. § 1983 against John Myrick ("Myrick") (the superintendent of Two Rivers Correctional Institution ("TRCI")), and four other ODOC employees, Mary Brandt ("Brandt"), Richard Young ("Young"), James Deacon ("Deacon"), and Craig Prins ("Prins") (collectively, "Defendants"), alleging violations of his constitutional rights under the Eighth and Fourteenth Amendments. Defendants now move for summary judgment and Walton cross-moves for partial summary judgment. *See* FED. R. CIV. P. 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. For the reasons that

PAGE 1 – OPINION AND ORDER

follow, the Court grants Defendants' motion for summary judgment (ECF No. 37), and denies Plaintiff's cross-motion for partial summary judgment (ECF No. 32).

## BACKGROUND

On the morning of March 15, 2016, Walton got into a fight with another inmate, Samuel Aslin ("Aslin"), in the dayroom of Housing Unit 11 at TRCI. (Deacon Decl. Ex. 1, at 5.) Brandt, who was assigned to Housing Unit 11 at the time, announced over the radio that there was a fight in the dayroom. (Deacon Decl. Ex. 1, at 5, 12.) A fellow officer responded to the scene, unsuccessfully instructed the inmates to stop fighting, and used physical force to separate Walton from Aslin. (Deacon Decl. Ex. 1, at 12.) The fight resulted in Aslin sustaining physical injuries that required a trip to Good Shepard Medical Center,[1] and the ODOC paid $1,338.05 in medical expenses associated with Aslin's hospital visit. (Deacon Decl. Ex. 1, at 4, 6, 17.)

On the day of the incident, Brandt filled out a misconduct report charging Walton with three ODOC rule violations: (1) Inmate Assault I; (2) Disrespect I; and (3) Disobedience of an Order I.[2] (Deacon Decl. Ex. 1, at 11.) Brandt's supervisor, Young, spoke to witnesses and

---

[1] Defendants provided video footage of the assault on Aslin and photographs taken after the incident. (*See* Deacon Decl. Ex. 1, at 22-24; *id.* Exs. 2-3.) Those materials reveal that Walton punched Aslin in the side of the face while he was seated and had his back turned to Walton (Deacon Decl. Ex. 3); Walton continued to strike Aslin after he fell to the floor and attempted to defend himself (Deacon Decl. Ex. 3); Aslin sustained injuries to the right side of his face (Deacon Decl. Ex. 1, at 20, 23); and there was blood splatter on the floor of the dayroom. (Deacon Decl. Ex. 2, at 8-10.) The Court declines to adopt Walton's version of the facts to the extent it is clearly contradicted by video footage. *See Scott v. Harris*, 550 U.S. 372, 379-80 & n.5 (2007) (noting that a "videotape quite clearly contradict[ed] the version of the story told by" the plaintiff and adopted by the Eleventh Circuit on appeal, and explaining that courts are free "to allow [a] videotape to speak for itself" because courts are not required to adopt a "version of the facts" that is "blatantly contradicted by the record, so that no reasonable jury could believe it").

[2] Under Oregon Administrative Rules ("OAR"), an inmate commits Inmate Assault 1 when he "[c]auses serious physical injury to another inmate or causes injury to an inmate that requires staff transporting the inmate to an outside agency for medical care," or "[c]ommits a unilateral attack in a location or under circumstances which creates a threat to the safety, security, or orderly operation of the facility, such as the dining hall or the recreation area." OR.

PAGE 2 – OPINION AND ORDER

reviewed and signed the misconduct report, and Walton was placed in segregation. (Deacon Decl. Ex. 1, at 11, 20.)

On March 18, 2016, Walton appeared for a disciplinary hearing, presided over by Deacon. (Deacon Decl. Ex. 4.) During the hearing, Deacon detailed the charges set forth in Brandt's misconduct report, received live testimony from Walton, watched the video footage of the incident, reviewed photographs, and read statements from responding officers into the record. (Deacon Decl. Ex. 4, at 1-7.) At the conclusion of the hearing, Deacon determined that Walton had committed Inmate Assault I, Disrespect I, and Disobedience of an Order I. (Deacon Decl. Ex. 4, at 7.) Deacon imposed the sanctions of 120 days in segregation, with credit for time served in advance of the hearing, and 28 days without access to the recreation yard. (Deacon Decl. Ex. 4, at 7.) Deacon also suspended a $200 fine, reserved the right to reopen the case at a later date to determine restitution costs, and elected not to impose any additional sanctions related to Walton's disrespect and disobedience charges. (Deacon Decl. Ex. 4, at 7-8.)

In a letter dated May 25, 2016, Prins responded to Walton's petition for administrative review, and upheld Deacon's findings and sanctions. (Deacon Decl. Ex. 6, at 1.)

On June 16, 2016, Walton appeared for a restitution hearing before Deacon. (Deacon Decl. Ex. 5.) During the hearing, Deacon informed Walton that a fiscal analyst had submitted a document indicating that ODOC paid $1,338.05 for Aslin's medical treatment, that he could not provide an itemization because he did not have access to such confidential medical records, and

---

ADMIN. R. 291-105-0015(2)(c). The OARs provide that an inmate commits Disrespect I when he "directs hostile, sexual, abusive or threatening language or gestures, verbal or written, towards or about another person that involves racial, religious or sexual harassment or a physical threat to the other person." OR. ADMIN. R. 291-105-0015(2)(f). The OARs provide that an inmate commits Disobedience of an Order I if he "overtly refuses to promptly, or in a timely manner, comply with a valid order, which creates a threat to the safety, security, or orderly operation of the facility (such as when one or more other persons are present)." OR. ADMIN. R. 291-105-0015(4)(a).

that he was ordering Walton to pay restitution in the amount of $1,338.05. (Deacon Decl. Ex. 5, at 1-3.)

On July 29, 2016, Walton filed the present action against Defendants, alleging violations of his constitutional rights. The pending motions followed.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### II. DISCUSSION

Walton alleges that Defendants violated his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. (Compl. ¶¶ 82-94.) Defendants argue that they are entitled to summary judgment because no reasonable jury could find for Walton on any of his claims. Walton moves for partial summary judgment with respect to the issue of liability on his due process claims. (Pl.'s Br. at 10.) As explained below, the Court grants Defendants' motion for summary judgment and denies Walton's cross-motion, because no reasonable juror could conclude that Defendants violated Walton's constitutional rights.

A.  **Eighth Amendment**

Walton alleges that the sanctions Deacon imposed were excessive and violated the Eight Amendment's prohibition of cruel and unusual punishment. (Compl. ¶ 93.) "Only a grossly disproportionate, punitive sanction will raise an Eighth Amendment excessive fines concern." *Craft v. Grannis*, No. 08-1179, 2010 WL 4796170, at *4 n.3 (C.D. Cal. Aug. 10, 2010) (citing *United States v. Bajakajian*, 524 U.S. 321, 334-35 (1998)). In this case, no reasonable juror could conclude that the imposition of $1,338.05 in restitution amounted to a "grossly disproportionate" or "punitive sanction." The record reveals that Walton committed a violent assault on Aslin that opened up "a sizeable laceration on his right cheek," that a registered nurse determined that Aslin needed to be transported to the hospital, that Aslin was transported by state vehicle, and that a fiscal analyst confirmed how much ODOC paid for Aslin's treatment. (Deacon Decl. Ex. 1, at 4, 17, 20, 21.) Walton was only required to pay the costs incurred by ODOC for medical expenses resulting directly from Walton's offense. Thus, no reasonable juror could find that the imposition of $1,338.05 in restitution was so grossly disproportionate to the severity of Walton's offense as to violate the Eighth Amendment. *See De-Luis-Conti v. Evans*, No. 05-2245, 2008 WL 3166958, at *26 (N.D. Cal. Aug. 5, 2008) (holding that a financial sanction was not "grossly disproportionate" where the petitioner "caused great harms to the victims," and noting that the State sought to recoup certain costs that it had incurred, not impose punishment on the petitioner).

Furthermore, no reasonable juror could find that 28 days without access to the recreation yard amounted to a grossly disproportionate sanction against Walton. *See May v. Baldwin*, 895 F. Supp. 1398, 1406 (D. Or. 1995) ("[P]laintiff was only deprived of outdoor exercise continuously for a period of, at most, four weeks which does not give rise to a legitimate Eighth Amendment claim."), *aff'd*, 109 F.3d 557 (9th Cir. 1997). Nor could a reasonable juror find that 120 days in

PAGE 5 – OPINION AND ORDER

segregation amounted to a grossly disproportionate sanction for committing a violent assault on another inmate. *See Goetsch v. Ley*, 444 F. App'x 85, 89 (7th Cir. 2011) (concluding that a four-month stay in segregation as punishment for an inmate's conduct did not rise to an Eighth Amendment violation, and therefore affirming dismissal of the plaintiff's claim at the screening stage).

      **B.**      **Substantive Due Process**

Walton challenges Deacon's finding that he committed the ODOC rule violations enumerated above and contends that the disciplinary proceedings violated his right to substantive due process. Substantive due process requires only that there be "some evidence in the record" supporting the prison's disciplinary decision. *Williams v. Thomas*, 492 F. App'x 732, 734 (9th Cir. 2012); *see also Requena v. Roberts*, 650 F. App'x 939, 940 (10th Cir. 2016) ("But the evidentiary standard a prison must satisfy in a disciplinary proceeding is minimal—a prison comports with due process so long as there is 'some evidence' supporting its decision.") (citation omitted).

In this case, there is evidence in the record to support the prison's disciplinary decision, including, but not limited to: (1) video footage of the assault, (2) post-incident photographs, and (3) corroborating statements from correctional officers. (*See* Deacon Decl. Exs. 1-6.) Those materials provided sufficient evidence for Deacon to conclude that Walton: (1) caused an injury to an inmate that required staff to transport the inmate to a hospital for medical care, or, alternatively, committed a unilateral attack in a location or under circumstances which created a threat to the safety, security, or orderly operation of the prison, OR. ADMIN. R. 291-105-0015(2)(c); (2) directed hostile, abusive, or threatening language or gestures towards or about another person that involved a physical threat, OR. ADMIN. R. 291-105-0015(2)(f); and (3) refused to promptly, or in a timely manner, comply with a valid order to stop assaulting Aslin,

PAGE 6 – OPINION AND ORDER

OR. ADMIN. R. 291-105-0015(4)(a).[3] (*See* Deacon Decl. Ex. 3, demonstrating that Walton assaulted Aslin; *id.* Ex. 1, at 12-21, indicating that officers were required physically to restrain Walton after he disobeyed several verbal commands to stop fighting while Aslin was "bleeding profusely" from "a sizeable laceration on his right cheek," that a nurse determined that Aslin needed to be transported to a hospital for medical treatment; and Compl. ¶¶ 16-31, admitting to getting into a heated verbal altercation with Aslin and asking him "come outside" before the assault occurred).

The Court concludes that Defendants are entitled to summary judgment on Walton's substantive due process claim because there is "some evidence in the record" supporting the prison's disciplinary decision. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) ("Given that some evidence supported the [decision that Bruce was a member of a prison gang], the district court properly entered summary judgment in favor of defendant prison officials on Bruce's due process claim.").

### C. Procedural Due Process

The Due Process Clause protects inmates from being deprived of liberty or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). *Wolff* sets forth the minimum procedural protections that must apply to prison disciplinary proceedings. *Id.* The Ninth Circuit summarized those requirements as follows:

> First, written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. Second, at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [hearings officer]. Third, there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. Fourth, the inmate facing

---

[3] The Court notes that Deacon only imposed sanctions on the assault charge.

> disciplinary proceedings should be allowed to call witnesses and
> present documentary evidence in his defense when permitting him
> to do so will not be unduly hazardous to institutional safety or
> correctional goals. Fifth, where an illiterate inmate is involved or
> where the complexity of the issue makes it unlikely that the inmate
> will be able to collect and present the evidence necessary for an
> adequate comprehension of the case, he should be free to seek the
> aid of a fellow inmate, or to have adequate substitute aid from the
> staff or from an inmate designated by the staff.

*Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (citations, quotation marks, brackets, and ellipses omitted), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). "As long as the five minimum *Wolff* requirements are met, due process has been satisfied." *Carter v. Silva*, No. 16-1201, 2017 WL 2363687, at *2 (E.D. Cal. May 31, 2017) (citing *Walker*, 14 F.3d at 1420).

The record indicates that Walton received written notice of the charges against him, that he was given more than twenty-four hours to prepare for his appearances, and that Deacon provided him with written statements discussing the evidence relied on, the reasons for the disciplinary decision, and the basis for the amount of restitution owed. (Deacon Decl. Ex. 1, at 1-4, 7-9, 11, 26; *id*. Ex. 4, at 1; *id*. Ex. 6, at 24.) Furthermore, nothing in the record indicates that Walton was prevented from calling witnesses or presenting documentary evidence in his defense (in fact, Walton testified in his own defense and reviewed the video footage and certain officer declarations during the hearing), or that Walton is illiterate or was unable to collect and present necessary evidence due to the complexity of the case. (*See* Deacon Decl. Ex. 4 at 1-9, confirming that Walton testified, and reviewed and discussed the relevant evidence; *id*. Ex. 6, at 22, stating that Walton has no active symptoms or "significant functional limitations" related to a serious mental illness; and *id*. Ex. 6, at 24, informing Walton of his right to present evidence and call witnesses). The five minimum *Wolff* requirements were satisfied here.

Nevertheless, Walton argues that he was denied due process because Deacon did not consider his ability to pay restitution before imposing the restitution award. In *Barrett v. Williams*, No. 06-cv-1045-JE, 2007 WL 1598158, at *3 (D. Or. May 30, 2007), an inmate at TRCI argued that he was denied due process when TRCI imposed a fine without first considering his ability to pay. The *Barrett* court rejected the principle that the rights delineated in *Wolff* "include a requirement that a disciplinary hearings officer consider an inmate's ability to pay a fine imposed," and noted that it "could find no authority supporting the conclusion that failure to consider the ability to pay a fine violates an inmate's due process rights." *Id.* Walton has not identified any authority that requires a disciplinary hearings officer to consider an inmate's ability to pay a restitution award, nor is the Court aware of any such authority. Accordingly, the Court rejects Walton's assertion that due process required an assessment of his ability to pay before Deacon ordered reimbursement of the medical expenses resulting from Walton's assault.

Walton also argues that he did not receive due process because he was not provided with an itemization of Aslin's medical expenses. The Court disagrees. Deacon informed Walton that he did not have access to an itemization because it was part of Aslin's confidential medical records. (Deacon Decl. Ex. 5, at 2); *see also* OR. REV. STAT. § 179.495 (codifying an inmate's right to confidentiality in his medical records, and noting that disclosures are only permitted under circumstances not present here). Deacon also provided evidence that a fiscal analyst had confirmed that ODOC paid $1,338.05 in medical expenses associated with Aslin's trip to Good Shepherd Medical Center on the day of the assault. (Deacon Decl. Ex. 5, at 2.) In light of the foregoing, the Court finds that Walton received all of the process he was due. *See Aquilar v. Kuloloia*, No. 06-cv-01002-KJD, 2007 WL 2891503, at *15 (D. Nev. Sept. 27, 2007) (rejecting

an inmate's claim that due process required that he have access to a fellow inmate's "medical records to enable him to contest the *amount* of restitution" he was ordered to pay); (Defs.' Mot. at 9, "It would compromise prison safety if ODOC gave assailants access to their victim's sensitive medical information every time medical attended is needed and restitution is owed.").

The five minimum *Wolff* requirements were satisfied here, and therefore the Court finds that Walton received due process.

### D. Qualified Immunity

Walton has failed to raise a triable issue of fact as to whether Defendants violated his Eighth or Fourteenth Amendment rights, and therefore the Court need not address Defendants' qualified immunity defense. *See Petty v. Shojaei*, No. 12-220, 2014 WL 7375606, at *9 n.7 (C.D. Cal. Dec. 23, 2014) ("Because Plaintiff failed to establish a triable issue of fact as to the existence of a constitutional violation, it is unnecessary for the Court to address [the defendant's] qualified immunity defense.").

### CONCLUSION

For the reasons stated, the Court grants Defendants' motion for summary judgment (ECF No. 37), and denies Plaintiff's cross-motion for partial summary judgment (ECF No. 32).

IT IS SO ORDERED.

DATED this  7th  day of July, 2017.

*Stacie F. Beckerman*

STACIE F. BECKERMAN
United States Magistrate Judge